Our next argument this morning is TRUSTID, Inc. v. Next Caller, Inc. 20-1950. Mr. Picard, I understand you have reserved five minutes of your time for rebuttal, and Ms. Columbia, you have reserved two minutes for rebuttal on the cross-appeal. If that's correct, then we're ready to proceed. Counselor Picard. Good morning, and may it please the Court. I'd like to start with the operational status issue in our appeal. And this issue hangs on one narrow question, that being, did the Board's final written decision find that Martin alone teaches operational status information? And I say that because the briefing in this case has revealed the following. There's no dispute from Next Caller that they argue that Martin alone, and not Abramson, or Abramson in combination with Martin, taught this limitation. And they do so quite forcefully in their red brief at page 35. And they do not dispute that if that is the case, that if the Board found Abramson was a necessary part, necessary art for its operational status information finding, that that would be an error under the APA. So with that, let's turn to what the Board found in its final written decision. This question is a bit cleaner for Claim 13, so I'd like to start with Claim 1, insofar as it may present a slightly more difficult spin on this issue. As an initial matter, I'd like to direct the Court to appendix 55, page 55 of the final written decision. And this is the discussion again of Claim 1. And here we see in clear, unequivocal language what the Board did for its operational status information finding. Quote, we find that Petitioner shows that the combination of Martin and Abramson teaches, and then it quotes the limitation. Now that finding squares with the Board's framing of the issue. And if we look to appendix 53 and 54, where the Board summarized Next Caller's position and its petitions, we see that the Board erroneously misunderstood that Next Caller had presented an alternate theory of a combination wherein Martin would be modified by Abramson to include Abramson's validation checks. This particularly appears in appendix 54, where the Board wrote, Petitioner further contends that one having ordinary skill in the art would have reason to modify Martin's central monitoring station to perform Abramson's validation checks. Their cite to the petition for that is at pages 26 to 29, which corresponds I believe to appendix 192 to 195. The problem with that is that if you turn to that portion of the petition, that is not the discussion of the operational status information limitation. It's the discussion of source origin confirmation metric. So the Board fundamentally misunderstood the starting point of the petition. And when it analyzed the art, it makes only one passing reference to Martin, and it describes Martin's teaching, but it does not connect in any way the teachings of Martin, this is at appendix 54, to the operational status information limitation. The only place it does that is at appendix 55, where it turns to Abramson and begins, importantly, and I think that's an important signal from the Board about what's going on here. And in the second sentence, the Board, in the only place of its final written decision, connects in clear language the teaching of the art, in this case Abramson. It says, for instance, Abramson describes, and it connects what's in Abramson to what's described in the patent. So we are left with a clear record as to claim one, at least that the Board found there was a combination of Martin and Abramson for its operational status information finding. That is an error under the APA because that is not... This is Judge Stoll. I just want to ask you, what about the sentence at the bottom of page 54, where they say, we agree with petitioner and give credit to the testimony of Mr. Geyer. For instance, Martin teaches, if the received caller ID information 75 matches caller ID information 200, stored in memory 140, in processing 130, read status bits 210 to 330. Why isn't this reference to the status bits 210, 330 of Martin sufficient? Because that's what the petitioner was relying on for Martin's teaching of operational status information, right? That is what they relied on. I think the only fair reading of the Board's discussion of Martin, and particularly that sentence, it is simply summarizing what Martin discloses, but it is not connecting that disclosure to the claim limitation. And it makes that clear when it provides that summary paragraph at the conclusion of this, where they say, we find the combination. And I think that's made even more clear when we look at the Board's decision on rehearing. This is at, the discussion here is at Joint Appendix 111 to 112. And we argued to the Board that the findings for Claim 1 and also Claim 13 represented a new ground that wasn't in the petition. And the Board states that, furthermore, the petition clearly sets forth as ground to obviousness over Martin and Abramson and identifies disclosures of both Martin and Abramson. And then it talks about this as being a second alternate ground. What the Board seems to be doing is reconfirming their mistaken view that, somehow, having put Martin and Abramson generally in play, that they could rely on both of them in combination for the findings as to Claim 1. What if I were to read it as saying that, instead, what the Board is saying is that Martin teaches that claim element and, in addition, Abramson teaches that claim element and the combination of the two teach that claim element. I mean, what if it's just extra, their reliance on Abramson is just extra non-necessary information because they also found that Martin teaches that claim element. Is there an APA violation, then? So, if we were to rewrite the decision in a way that... Just for a minute, just take it hypothetically that my reading is that it says Martin teaches it and Abramson teaches it. Happily, Your Honor. So, of course, we don't think that's what's presented on this final written decision. But had the Board said, we find that Martin, the status bits, teach the operational status information, it would not be error for the Board to say, and in the alternative, Abramson also teaches it. Our position, of course, is that's not what happened here, as is clearly spelled out in the Board's summary and its discussion of that where it talks about, we find the combination of Martin and Abramson. Now, Your Honors, hypothetical would be more difficult to fit into the discussion of Claim 13, where this decision is devoid of any mention of Martin whatsoever. And Nextcaller, in its red brief, really doesn't contend with this. They suggest that somehow the Board here was, I think, incorporating by reference its discussion earlier from its discussion of Claim 1. The language of the final written decision at page 65 doesn't bear that out. They take an independent analysis of Claim 1 and rely entirely on Abramson. I would like, I'll pause there if there are further questions on operational status information. If there aren't, I'd like to discuss briefly Claim 4. Now, Claim 4 requires that the electronic system determine whether the format of the calling party number or billing party number is valid. And substantial evidence lacks, there's no substantial evidence to support the Board's finding. The theory advanced by Nextcaller was that Martin, by determining whether there was a match or mismatch of the incoming call information with the data stored in its memory, that that would, in the words of their expert, indicate the format is valid. There's a couple of problems we, of course, have disputed. And Geier agreed during deposition that whether there was a match or not wouldn't indicate anything about the format. But more importantly, the theory that Nextcaller has advanced is that one could infer certain things in the event of a match or mismatch, but that doesn't meet the claim limitation, which requires not that a POSDA could infer or some human after the fact could infer, but the electronic system itself make a determination whether the format is valid. And Martin simply doesn't have that. And for that reason, the Board should set aside, sorry, this Board should set aside the Board's finding as to Claim 4. I'll pause there for questions as to Claim 4. Thank you. Lastly, I would like to briefly touch on the source origin confidence metric, if I may. There are some similarities in the Board's finding for source origin confidence metric that we see as parallel to its findings on the information, operational status information. What happened for the first time in the final written decision, the petition had advanced a theory that you would need to modify Abramson in order to generate a probabilistic score instead of a binary measure. And the Board, in its final written decision, changed the thrust of the rejection to say there was not a need to modify Abramson, but that Abramson expressly taught that a score, in this case between 0 and 3, was returned by Abramson. And by changing the thrust of the rejection or proposed ground of unpatentability, that is likewise an error. I'll pause there. If there are questions, I'm happy to answer them. Otherwise, I will reserve the remainder for my rebuttal. Okay. We thank you, Counselor. Counselor Columbia? Hello? Ms. Columbia, you may begin. Thank you, Your Honor. May it please the Court, I will begin. Could you speak up a little bit? Yes. Is that better, Your Honor? A little bit better, not much. Let me try my speakerphone. Maybe that will be better. Is that better, Your Honor? Yes. Okay. I'll rely on the speakerphone. Okay. Shall I proceed? Yes. Okay. Thank you. May it please the Court, I will begin where my colleague left off with source origin confidence metric. Source origin confidence metric was clearly disclosed in the petition and in the written decision to institute. Really, the complaint is that the specific reference to paragraph 74 of the Abramson reference was not specifically cited for claim one in the petition or in the decision to institute and was cited in the petitioner's reply brief. However, the content, that is, that Abramson could be used to derive a probabilistic score using exactly the process ultimately found by the Board, was in the petition at Appendix 195, citing to Guyer at Appendix 1299 to 1301. And the only reason that the paragraph 74 came into play is because in patent owner's response, patent owner said it would not have made sense to use Abramson to derive a probabilistic score in that manner, and it turned out that Abramson itself discloses exactly that in paragraph 74. So, I think this is an attempt at a gotcha, but it's an attempt at a gotcha that does not work. Furthermore, patent owner clearly had an opportunity after the petitioner's reply, for example, with the file of Sir replied, and a motion to strike. This is Judge Stoll. I want to direct your attention to that first issue about operational status information, and I wanted you to address the argument that on the bottom of page 55, when the Board says, we find that the petitioner shows that the combination of Martin and Abramson teaches that claim limitation. Whether the Board violated the APA by improperly relying on Abramson to teach the claim element of operational status information. Your Honor, the Board did not violate the APA by bolstering its findings in reliance on Abramson. I would like to point out two things in response. One is, as you pointed out during my colleague's argument, the sentence at the bottom of page 54 clearly says that Martin teaches operational status information. It's not English because of the references, but if you look at that sentence that says, for instance, Martin teaches, it cites to Martin at paragraph 627 in figure 5, and if you go to figure 5 and work through the flowchart on figure 5, that sentence in the Board's final written decision is clearly saying that Martin teaches operational status information, which is the information in 145 of Martin figure 1, which is elucidated in figure 2, which has the status bits 210 to 330. Furthermore, for both claim 1 and claim 13, the claim as a whole is a claim to deriving the source origin confidence metric using the status information. What about the language on page 853 that says what petitioner's argument is? It says petitioner reports to Martin's teaching of status bits 210 to 330, and that's under the heading of this whole claim element. And then on the next page, right before the sentence you were just talking about, talking about the status bits 210 to 330, they say, we agree with petitioner. So wouldn't that be referring back to the argument that the petitioner made regarding Martin? Yes, Your Honor, I think that's another clear indication that the Board indeed found independently that Martin teaches the operational status information limitation. And the fact that the Board went on then, in the context of a claim that is about, that is directed to using that operational status information to derive source origin confidence metric, the Board went on to bolster its finding using Abramson, which is not a violation of the APA. The other point I would like to make just briefly is that the claim 13 is just like claim 1, Abramson has the combination of source origin confidence metric with operational status information, and so the fact that the Board, having already found that Martin teaches operational status information at the bottom of page 54, went on within that claim limitation to discuss Abramson, is simply an indication that the Board had already found the operational status information and was moving to the rest of the claim. With respect to claim 4, the Board clearly found that, relied on Guyer, the expert, and found that the Martin reference teaches determining whether the format of the calling party number or billing number is valid. Trusted's argument is that the technique of Martin, which is called matching numbers, doesn't tell you whether the format is valid, but indeed, if there is a match, and the expert explained this, then the format is valid, and of course, the prior art does not have to practice the limitation every time in order to render it obvious. Furthermore, the Board expressly relied not only on Mr. Guyer's explanation of Martin's teaching, but also on paragraph 124 of Mr. Guyer's declaration at appendix 13.13, which clearly explains that to the extent additional disclosure was necessary, it would have been obvious and straightforward to check for the validity of the claim, and that was not just a conclusory sentence or two, as Trusted argues, but rather an explanation of how a person of skill would have made that straightforward change to address things such as the format of whether the number had a 10 digits or had a 1 or a 0 at the front, which the Board itself pointed out had been well-known since the early 1960s. If there are no other questions, I will turn to the cross-appeal. Okay. The cross-appeal has to do with the limitation of a personal risk score and the fact that the Keeley reference, which was cited in the petition, clearly teaches through its explanation of trust ratings a personal risk score. Trusted really takes no issue with the fact that Keeley does indeed teach a personal risk score, and indeed that can be seen in the petition at appendix 211, footnote 23, which walks through the trust rating description in the Keeley reference and maps it to the personal risk score. So this is not just a procedural point, but in addition to the fact that Keeley on its merits teaches a personal risk score and also teaches the motivation to, sorry, and the petition included a clear explanation of the motivation to combine at appendix 186 to 189. This is Judge Stoll. Maybe I misheard you, but I thought you were saying that this footnote at page A211, footnote 23, showed me that it's undisputed that Keeley teaches the claim element, but I don't see that. Is that what you were saying? No, I'm sorry. I may have misspoken. I apologize if I did. I was simply pointing out that the board found that the petitioner had not explained how Keeley's complaints and the trust rating map to personal risk factors, and in fact, the petition at appendix 211 maps the trust ratings to the personal risk factors, including explaining... I thought it mapped the personal risk factors to the complaints. The complaints are the basis for the Keeley trust rating, Your Honor. I get it, but it's the personal risk factors are the basis for the trust rating, too. I'm just a little confused. You agree, though, it says Keeley discloses the personal risk factors, e.g., complaints, so it's mapping the complaints to the personal risk factors, and then those are used to determine a trust rating, right? Yes, Your Honor. Okay. Thank you. Yes. And the board also found that the petitioner had failed to explain the motivation to combine, and I would address the court to the petition at appendix 186 to 189 in footnote 22, which explains the motivation to combine to improve the system of Martin and also notes that Keeley, being a voice over IP system, that Guyer explained why it would have been advantageous to combine Martin with Keeley, with Keeley being an advance with the voice over IP capability. Do I remember correctly that the petition also informed the board that Keeley had been relied on during prosecution of the patent or some related patent and that the examiner had made certain findings as to what Keeley taught? Yes, Your Honor. The examiner found in three separate office actions that the Keeley reference rendered obvious the personal risk factor limitation, and as part of our appeal, we have argued that the board should, at a minimum, have acknowledged the examiner's prior findings and either given deference, as the board does to the examiner's findings in situations such as the advanced biomed case cited in our brief, advanced bionics case cited in our brief, either given deference to the examiner's findings or, at a minimum, acknowledge those findings and explain why the board had arrived at a different conclusion. Did the board explain at all the basis for its findings that the petition didn't explain why Keeley taught personal risk factors? No, Your Honor. The board simply states in a single sentence, and I'm struggling to find it, and I can get that for you when I come back, but the board simply states in a single sentence that petitioners failed to explain its position. Take page 87. Thank you. Yes, Your Honor. So it's a single sentence just simply saying that we didn't explain it and we didn't explain the motivation to combine, and both things are, in fact, explained in the petition itself. Unless there are questions, that completes my argument. Okay. Are there any questions from my colleagues? Counselor Columba, we thank you for your argument. Thank you. Yes. Mr. Picard, you have five minutes to the extent that you need the time. All right. Thank you. I would like to start with the question of whether the board and its discussion of operational status information was merely bolstering a Martin finding when it turned to Abramson in the final written decision, and there's a few important things that show that that was not the case. First, if we look at when the board first turns to Abramson, it gives the intro of Importantly, and I believe it's that page 55 of the appendix, and immediately following that lead-in of Importantly, a very important signal, the board connects the Abramson teaching to the description in the patent. As I mentioned before, in the very next paragraph, it summarizes, the board summarizes what they have done, and in the only place they summarize it with the word find, we find that petitioner shows the combination of Martin and Abramson teaches, which harkens back to its incorrect characterization about the alternate ground of a combination of Martin to include Abramson validation checks. And we see elsewhere in the final written decision where the board, when it makes an alternate finding, it does so in express terms, which we don't see in the discussion of operational status information. We pointed this out in our yellow brief, and an example of that appears in the joint appendix at 45, that last paragraph, where they're explicit in saying that they find as an independent reason, and then they find further evidence. So the board, when they intend to make an alternate or bolstering finding, they do so with express terms in this final written decision, and that's completely lacking. Mr. Picard, this is Judge Stoll. I understand your reference to Importantly, and I see that as the clue that you're referring to. I understand your point. But what about a point that when you look at page 53, there's, you know, the identification of the claim element, and then it says what the petitioner points to for teaching this claim element, and it's pointing to Martin, and the status fits 210 to 330, and then also, you know, refers the next sentence, the first two sentences there about Martin and status fits 210 to 330, and then, you know, after some discussion, they say, we agree with the petitioner and give weight to the testimony of Mr. Geyer. So why doesn't that support the idea that they thought that Martin, maybe as well as Abramson, but Martin taught the operational status information through status fits 210 to 330? Thank you. So as Your Honor points out, that sentence on 53, the petitioner points out Martin's teaching of status fits 210 to 330. That is the one and only theory that petitioner advanced in their petition. But the board continues, and at 54, they state incorrectly, and this is the first full sentence, I believe, relying on the testimony of Mr. Geyer. Petitioner further contends that one having ordinary skill in the art would have had reason to modify Martin's central monitoring station to perform Abramson's validation checks. And then it slides to a portion of the petition that has nothing to do with the operational status information. So when the board says we agree with the petitioner and credit and give weight to the testimony of Mr. Geyer, at best it's inconclusive about which theory they are agreeing with. And when we turn to that summary paragraph on page 55, the board makes crystal clear that what they have found is not Martin and bolstered by Abram, but a combination of Martin and Abramson. It is clearly saying that it's this further theory that they incorrectly understood the petitioner to have advanced. If there are no further questions on operational status information, I would like to make a brief point on the claim. The issue is not simply whether Mr. Geyer's testimony was conclusory, as we pointed out in our brief. When pressed on what the matching function in Martin does and whether it would reveal anything about the format of the number itself, Mr. Geyer couldn't give a satisfactory explanation. Martin simply doesn't explain what that status bit 250 does. And by the time we had gotten past the institution decision, it was 250 that was the particular status bit that the parties were fighting over. For the cross-appeal, I'm happy to rest on our briefs, unless the panel has any questions that they would like me to address. No, there doesn't appear to be any more questions. Thank you, Your Honors. Thank you. We appreciate the arguments of the parties today. This case will be taken under submission, and this court now stands in recess. The Honorable Court is adjourned until tomorrow morning at 10 a.m.